No. 21-55404

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LA ALLIANCE FOR HUMAN RIGHTS; et al.,
Plaintiffs-Appellees,

v.

CITY OF LOS ANGELES,
Defendant-Appellant,

and

COUNTY OF LOS ANGELES,
Defendant

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
DAVID O. CARTER, DISTRICT JUDGE
CASE NO. 2:20-cv-02291-DOC-KES

## EMERGENCY MOTION FOR STAY UNDER CIRCUIT
## RULE 27-3 IMMEDIATE RELIEF REQUESTED

**MICHAEL N. FEUER,** City Attorney (SBN 111529)
**KATHLEEN A. KENEALY,** Chief Deputy City Attorney(SBN 212289)
**SCOTT MARCUS,** Senior Assistant City Attorney (SBN 184980)
**BLITHE S. BOCK,** Assistant City Attorney (SBN 163567)
**MICHAEL M. WALSH,** Deputy City Attorney (SBN 150865)
200 North Main Street, CHE 7th Floor
Los Angeles, California 90012
(213) 978-2209 | Michael.Walsh@lacity.org

Attorneys for Defendant and Appellant
CITY OF LOS ANGELES

# Circuit Rule 27-3 Certificate

The undersigned counsel certifies that the following is the information required by Circuit Rule 27-3:

**Relief Requested**

The relief the City of Los Angeles requests in the emergency motion that accompanies this certificate is a stay of the Preliminary Injunction entered by the district court on April 20, 2021 ("the Order") (Dkt. 277), as later clarified (Dkt. 279), and stayed in part with additional obligations imposed (Dkt. 287), pending the City's appeal of this injunction.

**Why Prompt Relief Is Needed**

This case was brought by a group of business owners and residents who accuse the City of failing to take appropriate action concerning people experiencing homeless and who sought an injunction to force specific actions.

Relief is requested immediately. The district court's sweeping 110-page Order imposes upon the City imminent, broad, and onerous deadlines which have already required initial responses by the City. The Order's pending deadlines require burdensome preparations to begin immediately, improperly invade the province and duties of elected City officials, and threaten to severely disrupt City operations. These include (1) the requirement that the City escrow within 60 days $1 billion dollars that the City does not have and may not receive within 60 days,

and (2) the adjoining requirement that the City create a comprehensive, binding court-approved plan within 60 days to solve homelessness.  In addition, (3) the ban on all transfers of any City property after May 27, and (4) the requirement to provide housing for every resident of Skid Row, in staged deadlines within the next 90 to 180 days, will greatly disrupt City operations that the City must prepare for now.  In sum, the City is faced with either immediately being required to disrupt, negate, and otherwise put aside a broad range of municipal priorities in order to attempt to comply with the Court's order or face the prospect of failing to do so and being found in contempt.  Immediate relief is needed to address this situation.

**The City's Timely Efforts to Request a Stay**

The Order issued on April 20, 2021 (Dkt. 277) and was clarified on April 22. (Dkt. 279).  The City filed a notice of appeal and an ex parte application with the district court seeking a stay pending appeal on Friday April 23, 2021. Dkt. 281, 284.  The district court ruled on that request for stay on Sunday April 25, 2021 by granting a temporary, partial stay as to two items, denying the remainder of the request, and adding new directives, including a May 27, 2021 evidentiary hearing on "structural racism" and "what properties are available for homelessness relief." Dkt. 287.   The district court added an admonition: "Without a global settlement, the Court will continue to impose its April 20, 2021 preliminary injunction, subject

to certain modifications in response to the City and County's Applications to Stay

Pending Appeal (Dkts. 282, 284)[.]" *Id*. at 10. The City promptly responded by

preparing the current request to this Court with all deliberate speed and urgency.

**Notice**

Having been previously served with the request for stay filed with the

district court, and with the County's request filed with this Court, on the morning

of April 29, 2021, the City notified counsel for all parties by email of the City's

intention to file this motion. Plaintiffs stated they would oppose the motion.

Intervenors and Defendant County of Los Angeles stated they would not oppose.

Service will be effected by electronic service through the CM/ECF system. I

notified the court clerk by email on April 28, 2021 that the City was seeking a stay

pending appeal.

The Telephone numbers and addresses of the attorneys for the parties:

Louis R. Miller
Mira Hashmall
Emily A. Rodriguez-Sanchirico
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Rodrigo A. Castro-Silva
Lauren M. Black
Amie S. Park
OFFICE OF COUNTY COUNSEL
500 West Temple Street #648
Los Angeles, California 90012
Telephone: (213) 974-1830
Facsimile: (213) 626-7446

Matthew Donald Umhofer
Elizabeth A. Mitchell
SPERTUS, LANDES & UMHOFER, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
(310) 826-4700

Brooke Alyson Weitzman
William R. Wise, Jr.
ELDER LAW AND DISABILITY RIGHTS CENTER
1535 East 17th Street, Suite 110
Santa Ana, CA 92705
(714) 617-5353

Paul L. Hoffman
Catherine E. Sweetser
SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP
11543 West Olympic Boulevard
Los Angeles, CA 90064
(310) 396-0731

Carol A. Sobel
Weston C. Rowland
LAW OFFICE OF CAROL SOBEL
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401
(310) 393-3055

Shayla R. Myers
LEGAL AID FOUNDATION OF LOS ANGELES
7000 South Broadway
Los Angeles, CA 90003
(213) 640-3983


Dated:  April 29, 2021


        MICHAEL N. FEUER, City Attorney
        KATHLEEN A. KENEALY, Chief Deputy City Attorney
        SCOTT MARCUS, Senior Assistant City Attorney
        BLITHE S. BOCK, Managing Assistant City Attorney
        MICHAEL M. WALSH, Deputy City Attorney

By: */s/  Michael M. Walsh*
      **MICHAEL M. WALSH**
      Deputy City Attorney,
Attorneys for Defendant-Appellee City of Los Angeles, et al.

# TABLE OF CONTENTS

Circuit Rule 27-3 Certificate ........................................................ i

TABLE OF CONTENTS ........................................................ vi

TABLE OF AUTHORITIES ................................................ viii

I.      GROUNDS FOR IMMEDIATE STAY ................................1

II.     SUMMARY OF LITIGATION ...........................................2

    A.      Plaintiffs' Complaint ................................................2

    B.      The Case Was Stayed from March 19, 2020 to April 13, 2021. ...............3

    C.      Plaintiffs' Preliminary Injunction Motion ..................4

    D.      The District Court rejects Stay requests. ...................5

III.    STANDARD OF REVIEW .................................................5

IV.     THE LACK OF NOTICE OF THE BASIS FOR THE INJUNCTION JUSTIFIES A STAY ........................................6

V.      STAY IS APPROPRIATE BECAUSE THE CITY WILL LIKELY PREVAIL ON APPEAL .................................8

    A.      The Order Violates Separation of Powers and Federalism.......................8

    B.      The Novel Theories of Law Lack Support or Merit ...............10

        1.      No "special relationship" exists ...........................10

        2.      There is no merit to the "severe inaction" theory ...............11

        3.      The City has not interfered with family integrity ...............12

    C.      There is no equal protection claim based on race ...................13

D.    The "state-created danger" exception does not apply here......................14

E.    The City is likely to prevail on the ADA claims .....................................15

F.    The City is likely to prevail on the State law claim................................16

G.    The Record Does not Support the Order ..................................................16

VI.   THE CITY WILL SUSTAIN IRREPARABLE HARM ............................18

VII.  THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST
      STRONGLY FAVOR A STAY ...................................................................19

VIII.  CONCLUSION.........................................................................................20

CERTIFICATE OF COMPLIANCE...................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. Brown*,
  768 F.3d 975 (9th Cir. 2014) .............................................................. 7

*Azurin v. Von Raab*,
  792 F.2d 914 (9th Cir. 1986) ............................................................ 20

*Blackwell v. City & Cty. of San Francisco*,
  506 Fed. Appx. 585 (9th Cir. 2013)................................................... 15

*Brown v. Board of Education*,
  347 U.S. 483 (1954)........................................................................... 13

*Brown v. Plata*,
  563 U.S. 493 (2011)........................................................................ 7, 8

*City & County of San Francisco v. United States Citizenship & Immigration
  Servs.*,
  944 F.3d 773 (9th Cir. 2019) ............................................................ 19

*Cobine v. City of Eureka*,
  250 F. Supp. 3d 423 (N.D. Cal. 2017)............................................... 14

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989)..................................................................... 10, 11

*FTC v. Qualcomm Inc.*,
  935 F3d 752 (9th Cir. 2019) (per curiam) ........................................ 17

*Hernandez v. City of San Jose*,
  897 F.3d 1125 (9th Cir. 2018) .......................................................... 15

*Hispanic Taco Vendors v. Pasco*,
  994 F.2d 676 (9th Cir. 1993) ............................................................ 14

*Hunt v. Superior Court*,
  987 P.2d 705 (Cal. 1999) ................................................................... 16

*Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enforcement*,
  319 F. Supp. 3d 491 (D.D.C. 2018) .................................................. 12

*Jones v. City of L.A.*,
  444 F.3d 1118 (9th Cir. 2006), *vacated by settlement*, *Jones v. City of L.A.*, 505
  F.3d 1006 (9th Cir. 2007) .................................................................. 9

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) .......................................................... 10

*L. v. U.S. Immigration & Customs Enforcement*,
  302 F. Supp. 3d 1149 (S.D. Cal. 2018)............................................. 12

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) .............................................................. 6

*Lewis v, Casey*,
  518 U.S. 343 (1996)....................................................................... 8, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................... 9

*M.S. v. Brown*,
  902 F.3d 1076 (9th Cir. 2018) ........................................................... 9

*Michael H. v. Gerald D.*,
  491 U.S. 110 (1989)......................................................................... 12

*Midgett v. Tri-Ct. Metro. Transp. Dist. of Oregon*,
  254 F.3d 846 (9th Cir. 2001) ............................................................. 8

*Montoya v. City of San Diego*,
  2021 U.S. Dist. LEXIS 52340 (S.D. Cal. Mar. 19, 2021) ................ 16

*Munger v. City of Glasgow Police Dept.*,
  227 F.3d 1082 (9th Cir. 2000) ......................................................... 15

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................ 2, 5

*Pacific Radiation Oncology, LLC v. Queen's Medical Center*,
    810 F.3d 631 (9th Cir. 2015) .............................................. 6

*Patel v. Kent Sch. Dist.*,
    648 F.3d 965 (9th Cir. 2011) ............................................ 10, 11, 14

*Penthouse International, Ltd. v. Barnes*,
    792 F.2d 943 (9th Cir. 1986) ............................................ 7

*Quilloin v. Walcott*,
    434 U.S. 246 (1978)........................................................... 12

*Rizzo v. Goode*,
    423 U.S. 362 (1976)........................................................... 8

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992)........................................................... 13

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)............................................................. 12

*Swann v. Charlotte-Mecklenburg Board of Education*,
    402 U.S. 1 (1971)............................................................... 13

*Thomas v. County of Los Angeles*,
    978 F.2d 504 (9th Cir. 1992) ............................................ 6

*Tobe v. City of Santa Ana*,
    892 P.2d 1145 (Cal. 1995)................................................. 16

*Trump v. Int'l Refugee Assistance Project*,
    137 S. Ct. 2080 (2017)....................................................... 19

*United States v. Sineneng-Smith*,
    140 S.Ct. 1575 (2020)........................................................ 13, 17

*Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*,
  114 F.3d 976 (9th Cir. 1997) .............................................................. 15

*Weitzman v. Stein*,
  897 F.2d 653 (2nd Cir. 1990) .............................................................. 6

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7, 129 S. Ct. 365 (2008)...................................................... 18

**Statutes**
42 U.S.C. § 12132 ................................................................................ 15
ADA ............................................................................................. 4, 15, 16
Cal. Wel. & Inst. Code § 17000 ...................................................... 1, 16

**Other Authorities**
28 C.F.R. 25.150(a) ............................................................................ 15
Fourteenth Amendment ................................................................. 10, 11
Fed. R. App. P. 8(a) ............................................................................. 1
Fed. R. Civ. P. 62(c) ........................................................................... 1
Fed. R. Civ. P. 65(a) ........................................................................... 6

## I.     GROUNDS FOR IMMEDIATE STAY

Defendant City of Los Angeles hereby **requests an emergency stay** of the Preliminary Injunction entered by the district court on April 20, 2021 ("the Order") (Dkt. 277), as later clarified  (Dkt. 279), and stayed in part with additional obligations imposed (Dkt. 287) pending the City's appeal.  Fed. R. App. P. 8(a); Fed. R. Civ. P. 62(c).  In the alternative, the City **requests an immediate administrative stay** of the Order pending this Court's review of a stay pending appeal.  Defendant County of Los Angeles ("County") has also filed an Emergency Request for Stay of the Order in its appeal (Appeal No. 21-55395), and none of the Intervenors representing homeless persons oppose a stay pending appeal.

In a lengthy and sweeping ruling, the district court granted Plaintiff's Motion less than 24 hours after receiving opposition papers.  The Order bears little relation to the relief Plaintiffs sought.  Instead, it is filled with the district court's own factual assertions and novel legal theories—theories no party presented, and at least one of which Plaintiffs expressly (and correctly) directed only towards the County, because the statute on which it relies, doesn't apply to the City.  Cal. Wel. & Inst. Code § 17000.  In addition, the district court imposes an entirely new unrequested plan of its own design for City governance.  The remarkable terms of the Order include commands that the City immediately place in escrow $1 billion in future revenues and the creation of thousands of housing units in a matter of

1

weeks, along with the requirement that the City conduct a series of audits, investigations, and hearings.  Dkt. 277, pp.104-109; Dkt. 287, pp. 13-14.

In response to requests by the City and County, the district court temporarily stayed only two of the roughly sixteen provisions of the Order, and added additional obligations.  Dkt. 286, at 13, 14.  While that temporarily delays some of the Order's more onerous terms, the City must still undertake massive changes to (among other things) its housing policy over a period of days and weeks.  Almost all of the Order's terms must still be fully implemented before this Court could hear even an expedited appeal.  The City thus seeks emergency relief here.

The City agreed with the district court that homelessness is a crisis.  But a crisis—even one as serious and complex as homelessness—does not obviate the rule of law.  All of the factors weigh in favor of a stay: a strong likelihood the City will prevail, the City will suffer irreparable harm, and the balance of equities between the parties and the public.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## II.     SUMMARY OF LITIGATION

### A.     Plaintiffs' Complaint

On March 10, 2020, Plaintiffs sued over the effects of homelessness on downtown business owners and residents. While acknowledging the City has expended great effort, money, and resources to address the homelessness crisis, the Complaint asserts fourteen claims, thirteen of these against the City. Dkt. 1.

**B.     The Case Was Stayed from March 19, 2020 to April 13, 2021.**

The district court allowed multiple homeless rights advocates to intervene ("Intervenors").  Dkt. 18, 29.  The district court held an emergency status conference on March 19, 2020, attended, at the court's invitation, by the Mayor, the President of the City Council, the City Attorney, and other City officials. Acknowledging a unique opportunity to address the homelessness crisis, the City agreed to stay all proceedings and discuss settlement.  *See e.g.* Transcript of 3/19/20 Conference, Dkts. 39, 90.[1]  The Court also requested unfettered ex parte access to all parties and their representatives, to which the parties acquiesced.  *Id*.

In May 2020, during that stay, the court *sua sponte* issued a preliminary injunction mandating that Defendants offer housing to and relocate all persons "camped within 500 feet of an overpass, underpass, or ramp" by no later than September 1, 2020.  Dkt. 123 at 10.  The court vacated that injunction after Defendants reached an historic agreement to create 6,700 new shelter solutions in 18 months, which Defendants are complying with.  Dkt. 185-1.

In response to Plaintiffs' motion for preliminary injunction, and the County's motion to dismiss, the district court lifted its stay on April 13, 2021.  Dkt. 266.  The City has not yet responded to the Complaint and no discovery has begun.

---

[1] The district court's multiple status conferences held before the preliminary injunction motion were not evidentiary hearings with testimony subject to any examination.  *See* Dkt. 39, 90, 92, 94, 110, 112, 117, 162, 165, 181, 201, and 218.

## C.     Plaintiffs' Preliminary Injunction Motion

Plaintiffs' motion effectively asked the district court to become the local homelessness authority and compel the City to take sweeping and affirmative steps based on three legal theories (Dkt. 265 & 265-3):  (1) two constitutional violations—the state-created danger doctrine (Dkt. 265 at 38:28-39:2) and procedural due process for taking Plaintiffs' property values without notice and a chance to be heard. Dkt. 265, at 39:21-24 and 40:6-19; (2) ADA-related claims. Dkt. 265 at 34:13-14; and  (3) state law nuisance claims (*Id*. at 30:20-33:10).

The day after the Motion was filed, the district court ordered oppositions by April 19, 2021, but noted that "[n]o reply will be required from Plaintiffs."  Dkt. 266.  The City, the County, and the Intervenors all filed timely oppositions.  *See* Dkts. 269-271, 273-275.

Less than 24 hours after the oppositions were filed, and without a hearing, the district court issued a 110-page preliminary injunction order.  Dkt. 277.  In addition to the extraordinary directive that the City escrow $1 billion from its proposed budget, the Order compelled the City to cease all sales and transfers of City properties pending a court-ordered report by the City Controller on all land— not all *City* land, but ***all*** land—potentially available for homeless housing, to offer housing to everyone in Skid Row within 180 days, to create various audits, investigations, and reports, and many other provisions.  Docket 277, pp. 104-110.

4

Two days later, on April 22, 2021, the court clarified that the Order's directives were not limited to Skid Row but in fact applied to all districts in the City and County, and that the provision regarding the cessation of sales and transfers of City property did not apply to "projects in progress" (without defining what "in progress" means).  Dkt. 279.

### D.  The District Court rejects Stay requests.

The City and County each filed ex parte applications to stay the Order. Dkts. 282 and 284.  Plaintiffs opposed. Dkt. 285.  On April 25, 2021, the district court primarily denied the requests for a stay, agreeing only to delay (i) the compelled escrow of $1 billion by 60 days and (ii) the prohibition on land transfers until a May 27, 2021 hearing is held on the issue.  The court also required the City to create a binding spending plan within 60 days.  Dkt. 286, 287.

### III.  STANDARD OF REVIEW

The Supreme Court has outlined four factors to consider in issuing a stay pending appeal: (1) whether the applicant has made a strong showing of likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other interested parties; and (4) where the public interest lies.  *Nken v. Holder*, *supra,* 556 U.S. at 434.  "The first two factors . . . are the most critical."  *Id.*  The Ninth Circuit employs a "sliding scale" approach to these factors, so that a stronger

showing of one element may offset a weaker showing of another. *Leiva-Perez v. Holder*, 640 F.3d 962, 964-66 (9th Cir. 2011). But when considering a preliminary injunction against a state agency, "a strong factual record is necessary; our review of the injunction must be more rigorous when we review an injunction against a state as opposed to a federal agency, since the Supreme Court requires a showing of an intentional and pervasive pattern of misconduct in order to enjoin a state agency." *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992).

## IV. THE LACK OF NOTICE OF THE BASIS FOR THE INJUNCTION JUSTIFIES A STAY

The Order is premised on legal theories never before expressed, cited evidence never before referenced, and granted relief never before requested. Before a preliminary injunction may issue, there must be notice "to give the opposing party a fair opportunity to oppose the motion . . . and the court must allow that party sufficient time to marshal his evidence and present his arguments against . . . the injunction. … Such an order cannot properly be entered without notice." Fed. R. Civ. P. 65(a); *Weitzman v. Stein*, 897 F.2d 653, 657 (2nd Cir. 1990) (internal citations and quotations omitted). Similarly, "[a] court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 633, 636 (9th Cir. 2015).

The district court based its Order on theories not pled in the Complaint or raised in Plaintiff's motion, such as equal protection and due process, and granted relief not sought, such as the escrow of money. A stay is justified pending appellate review because no sufficient nexus exists between the injunctive relief and the allegations in the complaint. See, e.g., *Penthouse International, Ltd. v. Barnes*, 792 F.2d 943 (9th Cir. 1986) (abuse of discretion to order a remedy outside the scope of the trial on the merits).

To support its power to act *sua sponte*, the district court cites *Brown v. Plata*, 563 U.S. 493 (2011) and *Armstrong v. Brown*, 768 F.3d 975 (9th Cir. 2014) but neither allows the Injunction that issued. Dkt. 277, p. 97. While the court in *Brown* had the power to fashion appropriate equitable relief—only after many years of litigation—the Supreme Court specifically noted that "courts should presume that state officials are in a better position to gauge how best to preserve public safety and balance competing . . . concerns. … [D]etails of implementation …[are left] to the State's discretion… leaving sensitive policy decisions to responsible and competent state officials." *Id.* at 538. That is precisely the opposite of what happened here.

Likewise, in *Armstrong,* that court modified an existing permanent injunction years after its issuance, and after giving the parties notice and an opportunity to address the modification in writing. *Id*. at 980. By stark contrast,

here the court went well beyond the scope of the claims, arguments, and relief sought by the Plaintiffs, provided no notice to the City of its intent to do so, or any pre-Order opportunity for the City to respond.

## V. STAY IS APPROPRIATE BECAUSE THE CITY WILL LIKELY PREVAIL ON APPEAL

### A. The Order Violates Separation of Powers and Federalism.

 "[A] federal court must exercise restraint when a plaintiff seeks to enjoin any non-federal government agency, be it local or state." *Midgett v. Tri-Ct. Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 851 (9th Cir. 2001); *see also Rizzo v. Goode*, 423 U.S. 362, 380 (1976); *Lewis v, Casey*, 518 U.S. 343, 362-63 (1996) (district court overstepped where it imposed system wide remedial injunction that "was inordinately – indeed, wildly – intrusive" and failed to give prison officials primary responsibility for devising a remedy).  Because local governments are afforded the "widest latitude in the dispatch of its own internal affairs" they are owed significant deference in shaping policies to deal with complex social issues. *Rizzo*, 423 U.S. 362 at 380.  Even where authorizing broad structural injunctive relief, the Supreme Court cautions that the choice of the means to achieve the result should be left to local officials. *See e.g., Plata*, 563 U.S. at 501 ("The order leaves the choice of means to reduce overcrowding to the discretion of state officials."); *Lewis*, 518 U.S. at 362-63 (praising a court for having "scrupulously respected the limits on [its] role" rather than "thrusting itself into prison

8

administration"). Indeed, the Ninth Circuit specifically noted in the homelessness context that federal courts can prevent enforcement of unconstitutional ordinances (not alleged here), but cannot dictate the precise way the City should address the crisis. *Jones v. City of L.A.*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated by settlement*, *Jones v. City of L.A.*, 505 F.3d 1006 (9th Cir. 2007).

Instead, the district court issued an Order that turns the City's daily affairs over to the federal judiciary, tramples over the expertise of the agencies meant to manage those affairs, and usurps the discretion of elected officials to continue responding to the complex homelessness crisis. That is without even considering the Order's effects on other priorities that draw on local resources—such as COVID-19 and the City's budget crisis. This "inordinately – indeed wildly – intrusive" and overbroad sweeping injunction is the kind consistently overturned on the grounds of federalism and separation of powers, especially at this early stage of litigation. *See e.g., Lewis*, 518 U.S. at 363.

The Order also exceeds the district court's equitable powers because Plaintiffs cannot establish Article III standing where there is no redressability for the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("Even where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief.") (citations omitted); see also

*Juliana v. United States*, 947 F.3d 1159, 1172, 1175 (9th Cir. 2020) (directing dismissal of case on redressability grounds where plaintiffs sought to compel the executive and legislative branches to address climate change in specific manner).

### B.    The Novel Theories of Law Lack Support or Merit

This district court invoked three novel theories that Plaintiffs had not even raised: a "special relationship" theory to support a violation of due process; a "severe inaction theory" to support an equal protection violation; and a family integrity theory, again to support a due process claim.  Dkt. 277, 75-86.

### 1.    No "special relationship" exists

"The Fourteenth Amendment's Due Process Clause generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).  An exception exists "when a state 'takes a person into its custody and holds him there against his will,'" by "'incarceration, institutionalization, or other similar restraint of personal liberty.'"  *Id.* at 972 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)).  The district court held that this exception applied, as Los Angeles "restrains the personal liberty of L.A.'s homeless population" because of its "lengthy history of discriminatory policies." Dkt. 277 at 76.

Here, Plaintiffs did not argue, nor did the Order find, that the City controls the autonomy of either Plaintiffs or people experiencing homelessness as if it were their parent—let alone their jailor, so no special relationship duty can exist. *DeShaney*, 489 U.S. at 200.

*Patel* confirms no such affirmative duty exists here. In *Patel*, a developmentally disabled student who was supposed to be constantly supervised was instead allowed to go to the bathroom on her own, where she had sex with another student. 648 F.3d at 969-70. The student's mother sued the school district for violating a putative Fourteenth Amendment affirmative duty to her daughter. *Id.* at 971. In affirming summary judgment against the mother, the Ninth Circuit held that there was no special relationship even though the district acted in loco parentis under state law while the child was at school. *Id.* at 972–73.

### 2. There is no merit to the "severe inaction" theory

Next, the court opines that "a textualist reading" of the Fourteenth Amendment's Equal Protection Clause supports the notion that the City has an affirmative duty to act because "the double negative implication of 'not deny' can literally be interpreted to mean 'to provide'". Dkt. 277 at 77. The only authority offered to support this interpretation is a law review article.

Imposing sweeping affirmative obligations on the City based on this unprecedented constitutional theory not only has the ironic impact of denying the

City due process—since the theory was raised for the first time in the Order itself—but it creates an expansive new right out of whole cloth. Courts are supposed to be circumspect in creating new constitutional rights. *Michael H. v. Gerald D.*, 491 U.S. 110, 123 (1989).

### 3. The City has not interfered with family integrity

The last legal theory initiated by the district court is that "conduct attributed to the City and County violates unhoused families' substantive due process right to family integrity." Dkt. 277, 80. This theory plainly fails for the fact Plaintiffs never alleged it, nor could they since they lack standing to seek a remedy for injuries to hypothetical third parties' family integrity. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–102 (1998) (lacking standing is fatal; a court should go no further). The cases the court identifies as "comparable"—*Quilloin v. Walcott*, 434 U.S. 246 (1978), *Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enforcement*, 319 F. Supp. 3d 491 (D.D.C. 2018), and *L. v. U.S. Immigration & Customs Enforcement*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018)—are all distinguished on this point. Each of them was brought by the people whose family integrity allegedly was disrupted by government action. Not so here.

Even if that were not enough to dispose of this theory, there is no evidence that the City took any affirmative action that violated family integrity. Rather, the Order relied on reference materials which assert that African Americans are

overrepresented in both people experiencing homelessness in Los Angeles and in children in the County's foster care system—without explaining if or how one thing can or does lead to the other, and, even if they did, how the City must be compelled to remedy it in the manner of the court's choosing.  Dkt. 277 at 84-85.

### C.    There is no equal protection claim based on race

Plainitffs' Complaint does not allege, and their motion does not argue, an Equal Protection claim based on race.  Ignoring well-settled law limiting its decision to arguments made by the parties (*United States v. Sineneng-Smith,* 140 S.Ct. 1575, 1579 (2020)), the court concluded that "historical constitutional violations" by the City supported an injunction "to actively remedy its homelessness crisis."   Dkt. 277 p. 72.

But the Order never identifies a *specific* violation by the City, and any use of equitable power must be tailored to a specific constitutional violation, not merely a desire to "disrupt the status quo." Dkt. 264, pp. 8-10; *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 389 (1992) ("Federal courts may not order States or local governments . . . to undertake a course of conduct not tailored to curing a constitutional violation that has been adjudicated.").  The Order primarily cites to *Brown v. Board of Education*, 347 U.S. 483 (1954) and *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1 (1971), cases involving the purposeful exclusion of African-American children by public schools.  However,

nothing of the sort has been litigated – much less established with evidence– in this case.  And while a serious concern, disparate impact is generally insufficient by itself to form the basis of a constitutional violation–especially where, as here, nothing in the record indicates ongoing or intentional discrimination. *See*, e.g., *Hispanic Taco Vendors v. Pasco*, 994 F.2d 676, 680 (9th Cir. 1993).

### D.    The "state-created danger" exception does not apply here

The plaintiff business owners and residents allege harm from homeless individuals who live near their businesses, whom they label a "state-created danger."  The Order reached back over a century to find that homelessness itself results from a state-created danger.  Neither assertion supports the Order.

The "state-created danger" doctrine is a limited deviation from the rule that the government's failure to protect a person against harm is not a due process violation.  *See Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 432-33 (N.D. Cal. 2017).  This exception applies only where: (1) "there is 'affirmative conduct on the part of the state in placing the plaintiff in danger'" and (2) "the state acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 974.

First, the district court premises its Order on a finding that people experiencing homeless—not Plaintiffs—have been placed in danger.  Second, Plaintiffs did not allege or present any evidence that the City ever took any affirmative action that restrained anyone's freedom to act on their own behalf,

14

specifically directed an individual into a dangerous situation, or eliminated other options to avoid that danger.  *See Hernandez v. City of San Jose*, 897 F.3d 1125 (9th Cir. 2018); *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082 (9th Cir. 2000).  Third, no evidence suggests the City acted with the deliberate indifference towards Plaintiffs necessary to support the state-created danger doctrine.  Indeed, Plaintiffs confirm that the City has expended great efforts, money, and resources to address the homelessness crisis.  *See* Dkt. 1, ¶¶ 2, 18, and 74.

### E.    The City is likely to prevail on the ADA claims

The court incorrectly found that Plaintiffs were likely to succeed on their ADA claim because numerous City and County sidewalks "fail to meet the minimum requirements of the ADA due to the creation of homeless encampments" which the court characterizes as "the outcome of decades of active policy choices and deliberate indifference on the part of the City and County."  Dkt. 265 at 91. But Plaintiffs did not and cannot establish the City discriminated against anyone solely by reason of their disabilities (42 U.S.C. § 12132; *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997)), nor that the City's sidewalks are unpassable when viewed in their entirety (28 C.F.R. 25.150(a); *Blackwell v. City & Cty. of San Francisco*, 506 Fed. Appx. 585, 586 (9th Cir. 2013)), nor that homeless people and their property are fixed architectural

15

barriers that the ADA addresses. *See Montoya v. City of San Diego*, 2021 U.S. Dist. LEXIS 52340, at *24 (S.D. Cal. Mar. 19, 2021).

### F. The City is likely to prevail on the State law claim

Cal. Wel. & Inst. Code § 17000 applies to counties, not cities (*see Hunt v. Superior Court*, 987 P.2d 705 (Cal. 1999); *Tobe v. City of Santa Ana*, 892 P.2d 1145 (Cal. 1995)), which is why Plaintiffs did not allege or move for relief on their Section 17000 claim against the City. Dkt. 265 at 25-33. The court decided Section 17000 should impose obligations on the City and applied the law contrary to its plain terms. Dkt. 277 at 88-90. The City is likely to prevail on this claim.

### G. The Record Does not Support the Order

The factual "record" cited in the Order does not show that Plaintiffs were likely to succeed on the merits of their claims. The Order does not rely upon any of Plaintiffs' evidence; instead, the court found its own "evidence": primarily two reports issued by LAHSA (*Id.*, n.4) and the UCLA Luskin Center (*Id.*, n. 10), which were never admitted or subjected to scrutiny in this case.

Also, these reports do not show any harm to Plaintiffs, who do not claim to be homeless persons of color. These reports state homelessness is a complex problem and no single factor, nor single actor, is its sole cause. Dkt. 277, p. 18 ("it is impossible to untangle the pervasive effects of institutional racism from other system failures that together cause a person to experience homelessness.") Still,

16

the Order improperly ascribed all of the fault for homelessness to the City, even for the *federal* policy of redlining, despite no evidence the City played any role in redlining or was a "but for" cause of homelessness. Dkt. 277, 6-7 and 72-73.

The remaining citations in the Order, many to newspaper articles and op-eds, are riddled with unsubstantiated allegations and opinions. Worse, many of these articles, even if their contents were established as factually true, do not support the statements ascribed to them in the Order, undermining the court's conclusion that "facts" support its conclusions. See, e.g. Dkt. 277, pp. 2, 11, and n. 63 (Order blames City for seizing houses but cites an article reporting the State, not City, pursued eminent domain).

###### H. This Appeal Raises Important Legal Issues Warranting a Stay.

A stay is also appropriate where, as here, the case involves "serious legal questions." *FTC v. Qualcomm Inc.*, 935 F3d 752, 755 (9th Cir. 2019) (per curiam). The Order implicates a serious legal issue—nothing less than the proper role of federal courts in litigation. In *Sineneng-Smith, supra*, the Supreme Court overruled a court that failed its role as neutral arbiter, explaining that courts should be "passive instruments of government" that do not "look [ ] for wrongs to right" but instead "wait for cases to come to [them], and when [cases arise] normally decide only questions presented by the parties." 140 S.Ct. at 1580. This Order is a textbook example of a federal court reaching far beyond the arguments before it

and looking for a wrong to right in a way that it deemed fit. A stay is required to correct this extraordinary overstepping.

## VI. THE CITY WILL SUSTAIN IRREPARABLE HARM

To support a stay pending appeal the applicant must show "that irreparable injury is likely in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 129 S. Ct. 365, 375, (2008) (citations omitted). The City will be irreparably harmed without a stay pending the outcome of the appeal.

First, the City simply cannot comply with the Order requiring $1 billion— about a seventh of the proposed general fund budget—be placed in escrow because the vast majority of this money is (a) not currently in the City's possession and (b) comes from sources that have specific restrictions and limitations on how the money can be spent, making lawful compliance impossible. Dkt. 284-1, ¶¶ 9-16. Delaying this escrow by 60 days will not solve this problem, especially because the district court has already stated that it will use those 60 days to require the City to create a broad, binding, court-approved and supervised financial commitment to solve homelessness. Dkt. 287, p. 13.

Furthermore, the Order imposes multiple obligations to be completed by unrealistic timeframes that will pass long before the appeal is resolved. Most notably, the City is ordered to create shelter and housing in 90 days for all unaccompanied women and children living in Skid Row, in 120 days for all

18

families, and in 180 days for Skid Row's general population. Dkt. 277, p. 109. Accordingly, if the stay is not granted, the City will be forced to somehow site and fund thousands of new shelter beds or housing solutions, and potentially displace persons or move them against their best interests (as noted in the opposition by the Intervenors). Dkt. 275 and 276. City properties, money, and other resources will further be tied-up and unavailable for other pressing City needs without a stay, resulting in the City suffering irreparable harm.

## VII. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST STRONGLY FAVOR A STAY

Although the likelihood of success on the merits and the irreparable harm in the absence of a stay are the key inquiries, a court will also consider "whether issuance of the stay will substantially injure the other parties interested in the proceeding" and where the public interest lies. *See City & County of San Francisco v. United States Citizenship & Immigration Servs.*, 944 F.3d 773, 789 (9th Cir. 2019); *see also Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). These factors weigh strongly in favor of a stay of the Order.

Notably, the Intervenors representing the interests of homeless individuals (Dkt. 18, 29) argued that "such a wide-reaching order would not serve the public interest; in fact, just the opposite." Dkt. 275 at 12:25-13:5. Like Defendants, the Intervenors argued that "Plaintiffs fail[ed] to put forth any argument, let alone evidence to meet its burden of showing that such a dramatic encroachment into the

provenance of the City and the County is warranted, let alone why such a broad injunction is in the public interest." Dkt. 275 at 12:19-22. Intervenors' opposition to the injunction—and their non-opposition to a stay pending appeal—is significant and particularly relevant to balancing the hardships of interested parties.

The Plaintiffs have no potential harm from a stay pending appeal in comparison to the City's hardship if a stay were denied, given the mandatory nature of the Order, which drastically alters the status quo and requires multiple, onerous actions in quick succession. *See Azurin v. Von Raab*, 792 F.2d 914, 915 (9th Cir. 1986) (granting stay pending appeal to preserve status quo and prevent dissipation of the assets). Even if the Order were ultimately upheld, the only impact on Plaintiffs if a stay were granted is a delay in enforcement of that Order.

## VIII. CONCLUSION

For the reasons above, the City requests a stay of the Order pending appeal. Due to the impending deadlines in the Order, the City urges an immediate Administrative Stay pending the Court's resolution of this request.

Dated:  April 29, 2021

        MICHAEL N. FEUER, City Attorney
        KATHLEEN A. KENEALY, Chief Deputy City Attorney
        SCOTT MARCUS, Senior Assistant City Attorney
        BLITHE S. BOCK, Managing Assistant City Attorney
        MICHAEL M. WALSH, Deputy City Attorney

By: */s/  Michael M. Walsh*
      **MICHAEL M. WALSH**
      Deputy City Attorney,
Attorneys for Defendant-Appellee City of Los Angeles, et al.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27 (d)(2) because it contains 4,903 words and the page limitation of Circuit Rule 27-1(1)(d) because it does not exceed 20 pages. This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1) because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

Dated: April 29, 2021

    MICHAEL N. FEUER, City Attorney
    KATHLEEN A. KENEALY, Chief Deputy City Attorney
    SCOTT MARCUS, Senior Assistant City Attorney
    BLITHE S. BOCK, Managing Assistant City Attorney
    MICHAEL M. WALSH, Deputy City Attorney

By: */s/ Michael M. Walsh*
    **MICHAEL M. WALSH**
    Deputy City Attorney,
Attorneys for Defendant-Appellee City of Los Angeles, et al.